1

2               UNITED STATES DISTRICT COURT
                     DISTRICT OF NEVADA
3

4  Ronald W. Collins,                          Case No. 2:22-cv-01795-CDS-BNW

5                  Plaintiff            **Order Addressing Defendants' Motions to**
                                       **Dismiss and Plaintiff's Motions for Leave,**
6  v.                                  **to Extend Time, and to Strike a Joinder**

7  Nevada Department of Corrections, et al.,
                                       [ECF Nos. 146, 216 247, 250, 251, 252, 253]
8                  Defendants

9

10         Incarcerated pro se plaintiff Ronald W. Collins brings this fifty-page complaint against

11  defendants Julie Williams, Joseph Swartz, Calvin Johnson, Frank Dreesen, James Scally,

12  William Oblak, Joseph Dugan, Jaymie Cabrera, Gollen Job, Martin Naughton, David Rivas, and

13  Tanisha Henry alleging various constitutional violations under 42 U.S.C. § 1983.[1] Third. am.

14  compl, ECF No. 214. Defendants Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan and

15  Cabrerar filed a motion to dismiss the third amended complaint (TAC) with prejudice. Mot. to

16  dismiss, ECF No. 146.[2] The motion is fully briefed. *See* Opp'n, ECF No. 167; Reply, ECF No. 168.

17  Additionally, defendants Job, Naughton, Rivas, and Henry filed a motion to dismiss. Mot. to

18  dismiss, ECF No. 247; Joinder to mot. to dismiss, ECF No. 251.[3] Collins did not file an opposition

19

20

21  _____

22  [1] Collins's TAC includes Nevada Department of Corrections (NDOC) as a defendant. ECF No. 214.
    However, I previously dismissed NDOC from the case with prejudice. Screening order, ECF No. 8 at 14.
    Therefore, NDOC is not a proper defendant in this action, and I do not analyze any claims against it.
23  [2] On October 21, 2024, I granted Collins' motion to amend the second amended complaint (SAC). Order,
    ECF No. 198. In that order, I gave Collins permission to file a TAC that was a carbon copy of his second
24  amended complaint (SAC) with the exception of substituting Dr. Martin Naughton for defendant John
    Doe #1 *Id.* In that same order, I gave defendants Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan,
25  and Cabrera an opportunity to supplement their motion to dismiss if they felt it was necessary. *Id.* A
    review of the docket demonstrates they chose not to do so. Therefore, although the operative complaint
26  is at ECF No. 214, the defendants' filing at ECF No. 146 is still the relevant motion to dismiss.
    [3] Collins filed a motion to strike Henry's joinder because Henry previously filed a motion for summary
    judgment. ECF No. 252. I address Henry's joinder motion in the body of this order.

to the motion but instead filed a motion to extend time to file an opposition.[4] Mot. to extend, ECF No. 250. I address each motion separately. For the reasons herein, I grant both motions to dismiss.[5]

## I. Legal Standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

---

[4] Collins wrote a letter to the court arguing that ECF No. 249, which was docketed as response to the motion to dismiss docketed at ECF No. 247, was intended to be an objection to the motion to dismiss. *See* ECF No. 253. This letter constitutes a rouge filing for two reasons. First, the letter constitutes a violation of LR IA 7-1(b), which states "[e]xcept as provided in subsection (a), an attorney or pro se party must not send case-related correspondence, such as letters, emails or facsimiles, to the court. All communications with the court must be styled as a motion, stipulation, or notice, and must be filed in the court's docket and served on all other attorneys and pro se parties. The court may strike any case-related correspondence filed in the court's docket that is not styled as a motion, stipulation, or notice." Further, there is no mechanism to file an objection to a motion to dismiss. A party can file a motion to strike, file an opposition, or agree to the motion. Here, Collins filed a motion to strike (ECF No. 252) which the court addresses in this order. Accordingly, Collins's letter is stricken.

[5] Collins filed a motion to supplement his response to defendants Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan, and Cabrera's motion to dismiss. ECF No. 216. This is an improper surreply, filed in violation of this District's local rules. *See* Local Rule 7-2(b) ("Surreplies are not permitted without leave fo court"). As previously noted in another order, Collins is no stranger to the rules of this court, and he was previously cautioned that failure to comply with the rules would not be tolerated. *See* ECF No. 92 at 3; 4 (warning Collins he is required to follow the rules of the court); *see also* ECF No. 152 at 3 (listing 10 prior cases brought by Collins and admonishing him that failing to adhere to proper procedural would result in striking rogue filings, and potentially entry of a vexatious litigant order). Therefore Collins's motion for leave to file a supplement is stricken.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

## II.    Background

Collins is an inmate currently housed at High Desert State Prison (HDSP). TAC, ECF No. 214 at 1. Collins brings claims for Eighth Amendment excessive force, Eighth Amendment deliberate indifference to serious medical needs, Eighth Amendment conditions of confinement, Fourteenth Amendment due process, First Amendment retaliation, and breach of contract.[6] *Id.* at 6, 14, 22. The TAC includes numerous allegations spread out over several years. The court does its best to summarize the lengthy and scattered allegations included TAC.[7]

### A.  May 2, 2022, incident and related allegations that followed.

In the TAC, Collins alleges that he is "classified as an inmate with disabilities" and that he was transferred to HDSP because of an order to see a specialist for an arm condition. *Id.* at 1.

---

[6] In their motion to dismiss, defendants Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan, and Cabrera address claims under the Americans with Disabilities Act and Rehabilitation Act. ECF No. 146 at 15. It is unclear why defendants included these arguments given that I previously dismissed these claims when I screened the original complaint. Screening order, ECF No. 8. Therefore, I do not address defendants' arguments as to these two claims.

[7] Citations to the TAC are included only to provide context to the action, and unless otherwise noted, do not to indicate a finding of fact.

He further alleges that Williams and Johnson enforce a policy at HDSP allowing officers to keep inmates in dry cells for hours without access to the toilet or water. *Id.*

Collins further alleges that on May 2, 2022, he was given a medical order from HDSP that he needed to receive testing. *Id.* at 7. Because of this testing, Collins was ordered not to eat or drink water after midnight. *Id.* Collins received that testing on May 3, 2022, and had "shock nerve tests" done on his arms and legs which caused him pain. *Id.* at 8. When Collins arrived at HDSP after his testing, he had not eaten for approximately twelve hours. *Id.* Prison officials then placed Collins in a dry cell for over four hours, with Collins having no access to a toilet or a sink. *Id.* While he was in the dry cell, Collins asked to use the bathroom and for some water from every prison employee that passed by his holding cell. *Id.* He also requested the same from defendant Swartz and told Swartz that he had nothing to eat or drink for twelve hours and that he was diabetic and not feeling well. *Id.* Collins alleges that he asked Swartz to call medical, but Swartz refused. *Id.*

After approximately four-and-a-half hours, Swartz and defendant John Doe removed Collins from the dry cell and began to escort him to the housing unit. *Id.* at 9. As Collins walked out of the dry cell, he claims that he was in excruciating pain and asked Swartz if he could speak with a supervisor to complain about him being kept in the dry cell for so long. *Id.* Swartz and John Doe then ordered Collins to get up against the wall, to which Collins complied. *Id.* The officers wanted to handcuff Collins behind his back, *id.* at 10, but Collins reminded them that he could not walk with his hands behind his back because he has pinched nerves and uses a leg brace and a cane. *Id.* The officers allegedly ignored Collins statement. *Id.* Collins then asked the officers to use belly chains, but the officers denied that request, too. *Id.* The officers also ignored Collins's second request to speak with a supervisor. *Id.* As a nurse passed Collins, he was planning to ask the nurse for help regarding his being handcuffed behind his back, but—as he turned to speak to the nurse—Swartz slammed Collins's head into the wall. *Id.* at 10–11. John Doe then handcuffed Collins behind his back. *Id.* at 11. The officers dragged Collins and

"slammed" him onto a medical transport cart. *Id.* After arriving at the housing unit, Swartz and John Doe ordered *Collins* to get off the medical cart. *Id.* As Collins attempted to stand up, his knees buckled from the pain coming from his lower back. *Id.* While Collins was on his knees, Swartz said, "O[h][,] that's how you are gon[n]a act?" *Id.* at 12. Despite telling the officers that he was in severe pain, Swartz and John Doe grabbed *Collins* and pulled his arms over his head while pushing his head downward. *Id.* While Collins was in that position, Swartz and Doe dragged him to his cell and threw him inside. *Id.*

That night, Collins stayed on the floor all night due to the pain in his back, neck, and arm. *Id.* He was again denied medical care. *Id.* On May 4, 2022, Collins called his mother and told her what occurred the previous day. *Id.* at 13. Collins's mother called the Inspector General's office to file a complaint and called HDSP to check on Collins's condition. *Id.* Later that day, Lt. Ledingham visited Collins and recorded their conversation and documented his injuries. *Id.* During the visit with Ledingham, Collins requested that Ledingham review the unit yard camera to see Swartz and Doe dragging him to his cell. *Id.* Ledingham also ordered the medical department to examine Collins. *Id.* A nurse also visited Collins to document his injuries, but Collins did not see a doctor. *Id.* Collins claims that this is common custom at HDSP. *Id.*

On June 6 and June 27, 2022, Collins had MRIs of his neck, brain, and spine. *Id.* at 14. According to Collins, the scans showed that he sustained several injuries from when Swartz and Doe slammed and dragged him the previous month. *Id.* Collins claims that Swartz and Doe injured him because he asked them to speak with a supervisor. *Id.* The medical department at HDSP allegedly cancelled Collins's pain medication after he started to complain about what occurred, and it denied him medical treatment for his injuries. *Id.* According to Collins, defendants Williams, Dreesen, and Scally were aware of the denial of medical care and refused to take any action. *Id.* at 14–15. In addition, Collins reiterates that when he requested to speak to a supervisor after leaving the dry room, Swartz and Doe attacked him for complaining. *Id.* at 15. Collins also states that he required reasonable accommodations under the prison's policies

because he had medical disabilities. *Id.* at 15–16. Specifically, Collins states that a reasonable person would have noticed that he needed belly chains because he could not walk with his hands behind his back. *Id.* at 17. He also says his medical condition is well-documented and that it is known that he has neurological issues. *Id.* at 17. Collins filed more than 100 grievances and kites regarding the failure of prison officials to abide by the policies that required reasonable medical accommodations for inmates with disabilities. *Id.* Therefore, Collins alleges that Williams is fully aware of what has been going on and simply "does not care" and refuses to take action. *Id.*

Due to his injuries, various other adverse incidents have occurred involving Collins's health. On May 25, 2022, Collins could not get up off the floor of his cell because of his injuries. *Id.* at 18. Prison officials called a "man down." *Id.* A nurse arrived at Collins's cell while he was still on the floor and told him that she could not enter his cell. *Id.* On June 25, 2022, Collins again could not get up from the floor, so a prison official called a "man down." *Id.* No medical staff appeared, and Collins remained on the floor for hours. *Id.* On July 18 and August 25, the same incident occurred: Collins could not get up off the floor, with no medical officials appearing to assist him. *Id.* at 18–19. On September 2, 2022, Collins remained on the floor for over nine hours before a medical staff came and picked him up. *Id.* at 19. Finally, on September 12, 2022, after the medical department saw that Collins called for another "man down," Officer G. Job gave Collins notice of disciplinary charges to stop him from seeking medical care. *Id.* The charges were dismissed a month later at a formal disciplinary hearing. *Id.* Williams knew about the instances when Collins called for "man down," but she did not facilitate medical care for Collins's injuries. *Id.* at 20–21. Collins continues to suffer from unbearable pain, and he cannot undertake any daily activities without ending up on the floor of his cell. *Id.* at 21. Before the May 2, 2022, incident with Swartz and John Doe, Collins could walk around most of the day; now, he requires a wheelchair. *Id.* At the time this complaint was filed, Collins says he still gets placed in the dry cell without access to water or a restroom. *Id.*

### B. "Man-down" allegations.

Collins also alleges that for months prior to the aforementioned 2022 incidents, he submitted grievances and kites to prison officials because he was having chest pains, numbness in his left arm and hand, breathing issues, and would turn red after eating. *Id.* at 22. The prison officials allegedly took no action regarding Collins's request for medical aid. *Id.* On August 19, 2021, Collins submitted an emergency grievance that stated that the HDSP medical department did not provide him any medical care when he explained his medical symptoms, such as chest pain and hand numbness. *Id.* In addition, two other Correctional Officers refused to call a "man down" one night when Collins turned red, telling him to "get the day shift to do it." *Id.* Even though prison officials responded to Collins's emergency grievance and told him that a doctor would see him soon, no doctor ever examined him. *Id.* at 23. However, prison officials did send Collins to the Las Vegas Pain Institute on August 31, 2021, to receive a spinal injection for his lower back. *Id.* The following day, while Collins was outside his cell, HDSP conducted a contraband search of his cell. *Id.* Upon being placed back in his cell, Collins began to rearrange his belongings. *Id.* However, he fell, and correctional officers found him unresponsive hours later. *Id.* Collins was rushed to the hospital. *Id.* at 24. Collins ultimately spent four days in the hospital and his medical report indicated that he suffered from a chronic cerebrovascular accident, diabetes melitus, and toxic encephalopathy. *Id.*

### C. 2022 medical billing incident.

Despite not receiving any disciplinary charges after the contraband search, Collins alleges that he received "sanctions" in the amount of $2,678.87 for a hospital bill. *Id.* at 25. John/Jane Doe 1 charged Collins. *Id.* On January 25, 2022, John/Jane Doe 1 withdrew $1,763.51 from Collins's trust account. *Id.* Collins says that he never received notice that he would be charged for the hospital bill, and he never had the ability to challenge the bill. *Id.* Williams enforced the alleged policy[8] of charging Collins with a medical bill without informing him about

---

[8] Collins did not state or cite the policy he is referencing.

it. *Id.* at 26. On several occasions, Collins filed requests and grievances to have his money returned. *Id.* at 26–27. Williams responded to one of the grievances but refused to take any action regarding the money taken from Collins's trust account. *Id.* at 27. On August 10, 2022, defendant John/Jane Doe 2 took more money from Collins's trust account to apply to the outstanding balance on the medical bill. *Id.* Collins filed another inmate grievance for the denial of medical care and the failure of Williams to act. *Id.* at 28. Williams responded to the grievance and rejected it. *Id.* According to Collins, Williams wrongfully rejected the grievance because she did not want her boss to review it. *Id.* Collins alleges that there is "no relief available to plaintiff through the inmate grievance procedure at HDSP." *Id.* at 29. He states that he has filed over two-hundred-and-fifty grievances without any relief or investigation. *Id.*

### D.  November 16, 2020, "man down" / medical emergency incident.

Further, Collins alleges that defendant Oblak refused to call "man down" medical emergency on November 26, 2020. *Id.* at 31. Later that day, "the medical department came to the unit and gave [Collins] medication." *Id.* Collins alleges that Oblak then wrote him up on a charge of "MJ 25 Threats" and that Dugan acted as the disciplinary hearing officer for the subsequent hearing. *Id.* at 32. Collins alleges that he informed Dugan many times about his medical conditions and asked that Dugan notify his supervisor that the conditions were not being addressed by the medical department. *Id.* Collins alleges Dugan was non-responsive to this. *Id.* at 33. Liberally construing the allegations, Collins also alleges that this incident constitutes a breach of a previous settlement agreement between himself and NDOC relating to other civil cases.[9] *Id.* at 34.

### E.  Additional allegations against Rivas and Naughton.

The TAC also includes various allegations against defendants Rivas and Naughton. It is not clear from the TAC when these allegations occurred.[10] First, Collins alleges that he gave

---

[9] *See* Settlement Agreement, ECF No. 243.
[10] The time frame is relevant to this court's evaluation of the allegations. Without the time frame, these allegations do not comply with Rule 8, which requires a complaint explain who is being sued, for what

Rivas a copy of the settlement agreement, which he says Rivas disregarded. *Id.* at 35–36. Collins also alleges that Rivas refused to honor a specialist's referral to rheumatology. *Id.* Collins further alleges that his appointment with Rivas was for a condition that caused him to turn red and pass out. *Id.* at 35. Despite this, Collins was denied a pair of anti-embolism stockings by Rivas at later appointment. *Id.* at 36.

At some unknown time, Collins alleges that Rivas also refused to provide him medication from the Las Vegas Pain Institute, and changed his pain medications from Tylenol with Codeine, Baclofen, and Indomethacin, to ordinary Tylenol and Cymbalta. *Id.* at 37. Collins alleges that this change was "medically unacceptable" because he had a "bad reaction" to Cymbalta, which Rivas was aware of. *Id.* Collins also alleges that a few days after he submitted a 110-page grievance detailing Rivas's continued refusal to provide him medical care, Rivas cancelled Collins's "Gabapentin neuropathic medications issued by pain specialist." [11] *Id.* at 38.

Collins next alleges that Rivas and Naughton refused to provide him "with his Treatment Plans by Las Vegas Pain Institute" which caused him pain. *Id.* at 41. He also claims that Rivas and Naughton denied him treatment for his left arm and dislocated clavicle, and that they refused to comply with orders from both a spinal specialist and a neurologist. *Id.* at 40, 41.

Collins further alleges that he has a "lump on his right testicle" which causes him pain, and problems walking or standing up for long periods of time. *Id.* at 42. He alleges that a specialist ordered an MRI to investigate the lump, but Rivas and Naughton refused to make a referral for a diagnosis or treat the condition. *Id.* Rivas and Naughton also allegedly refused Collins access to a hand specialist for a follow up appointment. *Id.* at 43.

---

relief or what theory, and with enough detail to place defendants on notice of the allegations against them, and with enough detail to guide discovery. Collins is cautioned that when litigants fail to comply with Rule 8(a), courts may dismiss the complaint sua sponte. *See, e.g., Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1000 (E.D. Cal. 2022) (collecting cases).

[11] Collins also alleges that Rivas cancelled the Gabapentin prescriptions for all inmates statewide. *Id.* at 39.

Collins also alleges that Rivas was aware of his flat-yard restriction, and that he failed to provide plaintiff with a walker ordered by a specialist which caused him to fall and break his toe. *Id.* at 43–44. Rivas then failed to provide him any treatment for his broken toe. *Id.* at 44. Collins makes the same allegations against defendant Cabrera. *Id.* at 44. Collins alleges that Naughton, as a member of the "URP Board,"[12] denied specialists' treatment orders in violation of the settlement agreement. *Id.*

Collins also alleges that Rivas refused to provide any treatment for his injuries resulting from being dragged by Swartz and John Doe. *Id.* at 45. Collins alleges that these injuries were shown in an MRI. *Id.*

**III.   Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan, and Cabrera's motion to dismiss (ECF No. 146).**

**A.   Discussion**

*1.   Collins's supervisory liability claims against Williams, Johnson, Dreesen, and Scally are dismissed.*

In their motion to dismiss, defendants argue that claims against Williams, Johnson, Dreesen, and Scally must fail because Collins has failed to plausibly allege supervisory liability under 42 U.S.C. § 1983. ECF No. 146 at 5, 6. Defendants argue that the TAC alleges: (1) Collins grieved after the alleged violations had already terminated; (2) Collins only provides conclusory allegations that these defendants were supervisors who failed to take some "unidentified action" in this capacity to terminate an ongoing violation; or (3) that these defendants failed to provide medical treatment when they are not doctors or medical personnel. *Id.* at 6. Defendants argue that without more, denial of Collins's grievances is not sufficient to serve as a basis for liability under § 1983. *Id.* (citing *Bradberry v. Nevada Dep't of Corr.*, 2013 WL 4702953, at *17 (D. Nev. Aug.

---

[12] The court takes judicial notice of the Nevada Department of Corrections' Administrative Regulation 615, which identifies "URP" as the "Utilization Review Panel." *See* https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20615%20-%20Levels%20and%20Continuity%20of%20Care%20-%20Final%2006.27.24.pdf last accessed Feb. 24, 2025.

30, 2013)). In response, Collins argues that defendants Williams, Johnson, Dreesen, and Scally's consistent failure to take action in response to Collins's many grievances are sufficient to establish supervisory liability under § 1983. ECF No. 167 at 4–5.

To establish supervisory liability under § 1983, a person must allege (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Collins's only argument for supervisory liability is that these defendants failed to take action in response to numerous grievances. ECF No. 214 at 7, 14; *see also* ECF No. 167 at 4–5. When a defendant's only alleged involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," that defendant cannot be held liable under § 1983. *Gates v. LeGrand*, 2020 WL 3867200, at *5 (D. Nev. Mar. 27, 2020), *report and recommendation adopted in* 2020 WL 1890540 (D. Nev. Apr. 16, 2020). Collins alleges that defendants Williams, Johnson, Dreesen, and Scally's routine rejections of his numerous grievances indicates that they were aware of constitutional violations being perpetrated against him and that they just did not care enough to act. ECF No. 214 at 7, 14.

Collins arguments fail. First, prisoners have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process); *see also Daniels v. Aguilera*, 2018 U.S. Dist. LEXIS 11748 (E.D. Cal. Jan. 24, 2018) (collecting cases). Because there is no right to any particular grievance process, it is impossible for defendants to have violated Collins's constitutional rights by allegedly ignoring or failing to properly process grievances, much less be liable under a theory of supervisory liability. [13] *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013)

---

[13] There is a First Amendment right to petition the government through the prison grievance system process. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Thus, in some instances, interference with the grievance process may constitute a First Amendment claim. But Collins did not bring a First Amendment claim here.

1  (plaintiff must show that defendant's actions both actually and proximately caused deprivation

2  of federally protected right to impose Section 1983 liability).

3      Second, a review of the grievances that Collins attached to his complaint[14] indicates that

4  Collins's grievances were routinely rejected for failure to comply with grievance procedure. *See*

5  *generally* Pl.'s Ex., ECF No. 243-1 at 17, 20, 21, 23, 28, 31, 36, 38, 44 (various grievance denials for

6  procedural defects like failing to include the proper information, failing to submit grievances in

7  the proper order, abusing the grievance procedure). Therefore Williams, Johnson, Dreesen, and

8  Scally's rejections of Collins's grievances were because Collins failed to properly follow

9  procedure. Further, each grievance denial clearly states why the grievance was denied. *See id.*

10 Collins, by his own admission, is very familiar with the grievance procedure at HDSP and was

11 consistently informed why his grievances were rejected. He had every opportunity to file his

12 grievances properly and failed to do so. "An inmate is required to exhaust only available

13 remedies." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Booth v. Churner*, 532 U.S. 731,

14 736 (2001). "To be available, a remedy must be available 'as a practical matter'; it must be

15 'capable of use; at hand.'" *Id.* (citation omitted). The record clearly demonstrates that Collins

16 was provided a remedy to address the issues with his grievances, but he declined to make use of

17 them.

18      Thus, based on the record before the court, I cannot find that Williams, Johnson,

19 Dreesen, or Scally committed a constitutional violation by denying Collins's grievances, nor can I

20 find that any of them personally participated in any alleged constitutional violation by properly

21 rejecting grievances for failing to follow procedure. *Gates*, 2020 WL 3867200, at *5. Defendants'

22 motion to dismiss as to the supervisory liability claims is granted with prejudice and without

23 leave to amend.

24

25 [14] Although the court is generally confined to the four corners of the complaint when analyzing a motion

26 to dismiss when there are documents attached to the complaint, those documents are deemed as part of the complaint and may be considered in evaluating a motion to dismiss. *Catholic League for Religious & Civ. Rts. v. City & Cnty. of San Francisco*, 464 F. Supp. 2d 938, 941 (N.D. Cal. 2006).

### 2. *Collins's official capacity claims are dismissed.*

Collins alleges claims against Johnson and Williams in their official capacity because they enforced a policy allowing officers to keep inmates in the property intake units dry with no water or bathroom for hours. ECF No. 214 at 6. Defendants argue that these official capacity claims against Johnson and Williams must be dismissed because Collins fails to "allege and identify with specificity any policy, whether regulation, statute, or memoranda, written by Defendants authorizing these conditions." ECF No. 146 at 7. I agree.

Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff seeking injunctive relief against the State need only "identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to the injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). "[A] bare allegation that government officials' conduct conformed to some unidentified government policy or custom" is insufficient to survive a motion to dismiss. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In his complaint, Collins simply says that there is a "policy" to keep inmates in the property intake units dry with no water or bathroom for hours without citing to any document or providing specific facts demonstrating the policy's existence. ECF No. 214 at 6. This allegation is merely conclusory and cannot survive a motion to dismiss. *Saved Mag. v. Spokane Police Dep't*, 19 F. 4th 1193, 1201 (9th Cir. 2021) (affirming district court's grant of a motion to dismiss when plaintiffs did not plausibly allege a policy). Defendants' motion to dismiss is granted as to the "official capacity" claims against Johnson and Williams.

### 3. *Collins's Eighth Amendment claims are dismissed.*

The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime. U.S. Const. amend. VIII. When an inmate challenges the conditions of confinement as cruel and unusual, the inmate must demonstrate (1) an objective showing that the deprivation was sufficiently serious and (2) a subjective showing that the prison official acted with a

"sufficiently culpable state of mind." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Williams v. Seiter*, 501 U.S. 294, 298 (1991)).

Collins brings three Eighth Amendment claims, challenging: (1) the conditions of his confinement, (2) alleged excessive force used against him by certain defendants, and (3) alleged deliberate indifference to serious medical needs by other defendants. I address each claim in turn.

### a.    Condition of confinement

Collins alleges that defendant Swartz left him in a dry cell without water or a toilet for four-and-a-half hours following a medical transport in violation of the Eighth Amendment. ECF No. 214 at 8. Defendants argue that this claim should be dismissed because it is not sufficiently severe, and Collins failed to allege any sustained harm or real risk of harm. ECF No. 146 at 8–9. Swartz also argues that he is entitled to qualified immunity. *Id.* at 9.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To be consistent with the Constitution, conditions of confinement may be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *Johnson*, 217 F.3d at 731.

Looking first at the objective prong, prison officials are required to ensure that prisoners are provided with adequate food, shelter, clothing, sanitation, medical care, and personal safety. *Id.* To determine whether a deprivation is objectively sufficiently serious, courts analyze the specific condition to determine "whether [it] and the amount of time the prisoner was subjected to it, poses a substantial risk of serious harm." *Hill v. Rhude*, 556 F. Supp. 3d 1144, 1153 (D. Nev. 2021) (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986)). Collins alleges that being left in a dry cell without water or the toilet for four-and-a-half hours violates the Eighth Amendment. ECF No. 214 at 8. However, courts in this circuit have consistently dismissed

condition of confinement claims where plaintiffs allege "temporary delays in allowing a prisoner to use a restroom or have access to food and water." *Pinder v. Byrne*, 2020 U.S. Dist. LEXIS 204598, at *17–18 (D. Nev. June 24, 2020) (collecting cases); *see also Foster v. J. Burnes & T. Campbell*, 2023 U.S. Dist. LEXIS 220063, at *9–10 (E.D. Cal. Dec. 11, 2023) (dismissing condition of confinement claim where plaintiff alleged he was placed in a holding cell for six hours without access to food, water, air conditioning, use of toilet, or access to his medication); *Harley v. Quindiahjen*, 2019 U.S. Dist. LEXIS 187528, at *9–10 (S.D. Cal. Oct. 29, 2019) (dismissing condition of confinement claim where plaintiff was not provided access to water or a working toilet for less than a day).

Collins, in his opposition, alleges that, because of the medical tests he was subjected to prior to the confinement, he was without water for twelve hours and not just four and a half. ECF No. 167 at 7. However, even taking this twelve-hour period without water as true and accepting it was somehow long enough to be considered "sufficiently serious," Collins's claim still fails because he does not allege that he suffered any harm from this lack of access to water and the toilet. *See Davis v. Penzone*, 2020 U.S. Dist. LEXIS 108454, at *25–26 (D. Ariz. Apr. 29, 2020) ("generally a plaintiff must sustain more than de minimis physical harm to be entitled to relief on a conditions of confinement claim"). Therefore, because Collins fails to adequately plead conditions of confinement claim, I do not evaluate the subjective prong of this Eighth Amendment claim. As a result, defendants' motion to dismiss as to this claim is granted.[15]

### b. *Excessive force*

In determining whether the use of force against a prisoner violates the Eighth Amendment, the core inquiry is whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The court must evaluate both the objective and subjective components of the alleged violation to determine whether force is excessive and violative of the Eighth Amendment. *Id.*

---

[15] Because I find that Collins failed to sufficiently allege the claim, I also do not address defendant Swartz's qualified immunity argument on the merits.

Therefore, the extent of the injury suffered by a plaintiff is a relevant, but not dispositive, factor in determining whether the force used was appropriate. *Id.* The Ninth Circuit applies a five-factor test to determine whether the use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quotation omitted).

Here, Collins alleges that Swartz violated the Eighth Amendment prohibition on excessive force when he (1) slammed his head and face on the wall to handcuff him before dragging him out of the property intake room and slamming him onto the medical cart, and when he (2) grabbed Collins's upper body, "pulled his arms up over his head[,] pushed his head down and [dragged] him" across the yard. ECF No. 214 at 11, 12. Defendants first argue that the excessive force claim must fail for two reasons. First, Collins fails to plead there was a malicious purpose for the force used against him. ECF No. 146 at 10. And although they acknowledge that Collins alleges that he had medical issues preventing him from being handcuffed behind his back, there are no allegations that Swartz knew about those issues, nor did Collins provide any documentation stating that he could not be handcuffed behind his back. *Id.* Second, defendants argue that Collins admits that he repeatedly refused to be handcuffed behind his back to be transported via medical care, and that he also refused to walk the remainder of the distance to his cell which necessitated Swartz's actions in dragging him to his cell. *Id.* In response, Collins argues that he did nothing wrong, that he has a disability and should have been given a reasonable accommodation instead of being handcuffed behind his back, and that defendants "clearly handcuffed him in violation of policy to inflict harm on him for requesting a supervisor." ECF No. 167 at 11. In their reply, defendants reiterate that "physically restraining Collins . . . was commensurate with the needs created by Collins' own disobedience."

Defendants argue that it is "undisputed" that Collins failed to comply with Swartz's orders. ECF No. 146 at 10–11. They argue that, because he failed to comply, Swartz's actions were indisputably warranted. *Id.* However, a review of the complaint's allegations makes clear, for purposes of the motion to dismiss stage of litigation, that Collins was attempting to inform Swartz that it was not possible for him to be handcuffed behind his back because a spinal issue made it too painful. ECF No. 214 at 11. Stated otherwise, as pled, Collins informed Swartz of his medical issues. Further, when Collins got off the medical cart and tried to stand, he was unable to walk because he was in "excruciating pain." *Id.* at 12. Thus, although Collins was not complying with orders, it was because he was in pain. Accepting as true all of the material factual allegations contained in the complaint, Collins's allegations that, after telling Swartz it was too painful for him to put his hands behind his back, Swartz "slammed his head and face on the wall," taken together with the allegation that, after getting off the medical cart and falling to his knees in "excruciating pain," and telling Swartz he was hurting, Swartz "grabbed him by his [upper] body[,] pulled his arms up over his head[,] pushed his head down and [dragged] him across the unit" allows the court to plausibly infer that Swartz acted maliciously. *See Arteaga v. Harlan*, 2017 U.S. Dist. LEXIS 215516, at *6–7 (C.D. Cal. Sept. 11, 2017) (finding plaintiff plausibly alleged an excessive force claim when defendant was informed that plaintiff was in pain and then placed his knee on his back). Accordingly, I find that Collins sufficiently alleged a claim for excessive force.

Swartz argues he is entitled to qualified immunity on this claim. The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 22 (1991). However, the Ninth Circuit has found that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). When, as here, a defendant asserts qualified immunity in a motion to dismiss under Rule 12(b)(6), "dismissal is not appropriate unless we can determine, based on the complaint itself,

that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal citation omitted). Given the special problems presented in resolving qualified immunity as a grounds for dismissing a claim, a court may deny a qualified immunity defense without prejudice and, after further factual development, a defendant may re-raise the qualified immunity issue "at summary judgment or at trial." *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

While a close call, I am mindful of my duty to be careful of granting qualified immunity at the motion to dismiss stage, so I decline to grant qualified immunity at this time. Taking the facts pleaded as true and, in the light most favorable to Collins, he is classified as a disabled inmate who suffered "excruciating pain" and injuries as result of Swartz's actions. While Collins admits that he was not complying with Swartz's verbal commands, there is nothing before the court to suggest he was resisting or engaging in other behavior that warranted physical force against Collins. Thus, without a fully developed factual record, it's possible that Swartz engaged in excessive force, so it would be premature for me to grant qualified immunity. *See Rhinehart v. Montgomery*, 2023 WL 2576773, at *4 (S.D. Cal. Feb. 27, 2023), *appeal dismissed*, 2023 WL 4056229 (9th Cir. 2023) (holding its premature for the court to make a factual determination on qualified immunity because the factual record has not yet been developed.) "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien*, 818 F.3d at 936. Therefore defendant Swartz's motion to dismiss this claim is denied, and the excessive force claim may proceed.

### c. *Deliberate indifference to serious medical needs.*

Collins next brings a deliberate indifference to serious medical needs claim against Williams, Dreesen, Scally, Oblak, and Dugan for ignoring his kites and grievances addressing his medical needs. *See generally* ECF No. 214. Collins alleges that Dugan, in response to Collins telling him that he was turning red, and his face was swelling up, ignored him and said, "what do you want me to do I don't have anything to do with your medical condition." ECF No. 214 at 31–32. Collins also specifically alleges that on November 16, 2020, Oblak refused to call a "man down"

medical emergency because Oblak feared Collins would attack the medical staff. *Id.* at 31–32.
Collins also brings a deliberate indifference to serious medical needs claim against Cabrera
because he knew about Collins's flat yard restriction but failed to provide Collins with a walker
that was ordered by a specialist to "walk up and down the hills" which eventually caused a toe
injury leading to Collins's inability to walk to his scheduled medical appointments. *Id.* at 44. He
also alleges that Cabrera, as the HDSP nursing director, refuses to schedule his medical
appointments, provide him with ordered medical devices, refuses to forward orders to doctors,
and refuses to have Collins scheduled for follow-up treatments. *Id.*

Defendants Williams, Dreesen, Scally, Oblak, and Dugan, without citing any authority in
support, argue that Collins has failed to properly allege a claim for deliberate indifference to
serious medical needs because he does not allege that any of these defendants had authority over
medical staff, and were not in any position to order medical treatment in response to a kite or
grievance. ECF No. 146 at 20. They also point out that Collins's complaint states that he received
treatment shortly after his interaction with Oblak and so it cannot be said that Oblak delayed or
denied him any treatment. *Id.*

As a threshold matter, the claims against Williams, Dreesen, and Scally cannot survive
because they are premised on supervisory liability, which I have already dismissed.

As for the remaining defendants, for a plaintiff to demonstrate deliberate indifference to
serious medical needs, he must show (1) a "serious medical need" by "demonstrating that failure
to treat a prisoner's condition could result in further significant injury or the unnecessary and
wanton infliction of pain" and (2) the defendant's response to the need was "deliberately
indifferent." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by*,
*WMX Techs., Inc v. Miller*, 1045 F.3d 1133 (9th Cir. 1997). To prove deliberate indifference, a plaintiff
prisoner must show that a defendant purposefully ignored or failed to respond to his pain and
there was harm caused by the indifference. *Id.* at 1060.

With Dugan, Collins alleges that his face was red and swollen and his neck and arms were red. ECF No. 214 at 31 Collins further alleges that he asked Dugan to help get him medical attention and Dugan refused. *Id.* at 31–32. Defendants provide no explanation for this except to argue that Dugan did not have "any authority over medical staff" and therefore Dugan was not capable of deliberately denying or delaying Collins's medical care. ECF No. 146 at 19–20. Despite this, I find that Collins allegation that he was "red and swollen" is not sufficient to plausibly allege a serious injury. In the Ninth Circuit, examples of serious injuries are "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin*, 974 F.2d at 1059–60). Without more, Collins's statements that his face was "red and swollen" and his neck and arms were red are insufficient for the court to find that a reasonable doctor or patient would find his injury serious. Further, Collins does not allege that his red and swollen face, nor his red hands and neck, significantly affected his daily activities, and he does not allege that the pain was "chronic or substantial." *Lopez*, 203 F.3d at 1131. Thus, I find that Collins fails to adequately allege a deliberate indifference to serious medical needs claim against Dugan.[16]

Turning now to Oblak, Collins alleges that Oblak refused to call a "man down" medical emergency when Collins was having a "medical emergency". ECF No. 214 at 31. However, Collins's complaint also states that after Oblak's shift ended, Collins's neighbor called a "man down" and a nurse came to the unit and gave Collins medication. *Id.* Therefore, Collins's allegation against Oblak's is one of delayed access to treatment. "When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury." *Kokoski v. Bernales*, 2023 U.S. Dist. LEXIS 239449, at *7 (D. Nev. May 30,

---

[16] Because I find that Collins failed to allege a claim, I do not reach the merits of Dugan's qualified immunity claim.

2023). Collins's complaint is devoid of any allegation that Oblak's refusal to call a "man down" emergency led to any further injury. Therefore, he has failed to plausibly allege a claim for deliberate indifference to serious medical needs against Oblak, and this claim is hereby dismissed.[17]

Collins also brings a deliberate indifference to serious medical needs against HDSP nursing director Cabrera because he allegedly knew about Collins's flat yard restriction but failed to provide Collins with a walker that was ordered by a specialist, which Collins states caused a toe injury and later resulted in Collins's inability to walk to his scheduled medical appointments. ECF No. 214 at 44. Collins also alleges that Cabrera refuses to schedule his medical appointments, provide him with ordered medical devices, refuses to forward orders to doctors, and prevents him from scheduling follow-up treatments. *Id.*

Turning first to the allegations related to the walker, defendants argue that Collins fails to allege that Cabrera had the authority to order any medical treatment, nor does he allege that Cabrera failed to follow any NDOC medical physician's order to provide a walker. ECF No. 146 at 20. I agree. Collins's complaint is devoid of any allegations that Cabrera had the authority to order the walker, or that an order to provide Collins a walker existed. Therefore, it cannot be said that Cabrera intentionally denied or delayed Collins access to medical care or interfered with any treatment prescribed by medical staff, so there are insufficient allegations to state a claim of deliberate indifference to medical needs against Cabrera. *See Stewart v. Fu*, 2021 U.S. Dist. LEXIS 81544, at *9 (E.D. Cal. Apr. 27, 2021) (finding there were insufficient allegations to find plaintiff was delayed or denied access to medical care nor any intentional interference with plaintiff's treatment plan)(citing *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

---

[17] Because I find that Collins failed to allege a claim, I do not reach the merits of Oblak's qualified immunity claim.

Turning next to the allegations that Cabrera refused to forward orders to doctors and have Collins scheduled for follow up treatments, these facts, without more, do not sufficiently demonstrate a deliberate indifference to a serious medical need. Collins does not allege or identify any doctors' orders Cabrera refused to forward, or what follow-up treatments he needed. He also does not allege what "serious medical need" Cabrera refused to treat. *See Iqbal*, 556 U.S. at 678 (stating that a pleading that "tenders naked assertions devoid of further factual enhancement" fails at the motion to dismiss stage). Collins's allegations that Cabrera was deliberately indifferent are insufficient, *see Gamble*, 429 U.S. at 104–06, so this claim is dismissed.[18]

### 4. Collins's First Amendment claim is dismissed.

Collins next alleges that Swartz retaliated against him and physically restrained him for asking for a supervisor in violation of the First Amendment. ECF No. 214 at 10–12. Defendants argue that this should be dismissed because Collins does not adequately plead that retaliation was a "substantial" or "motivating factor" in Swartz's decision to restrain Collins and because officers had a legitimate interest in restoring institutional security by handcuffing Collins. ECF No. 146 at 12–13. Collins also alleges a retaliation claim against Oblak and Dugan, claiming that they retaliated against him for his requests for medical treatment by refusing to call a medical "man down," and writing him up on a disciplinary charge. ECF No. 214 at 31–34. Collins alleges that Oblak wrote him up on a charge of "MJ 25 threats"[19] and Dugan was the disciplinary hearing officer. *Id.* Defendants put forth the same argument in response to the allegations against Oblak and Dugan as they did for Swartz. ECF No. 146 at 21–22.

---

[18] Because I find that Collins failed to allege a claim, I do not reach the merits of Cabrera's qualified immunity claim.

[19] It is unclear what MJ 25 threats are, but the court construes this allegation as some sort of disciplinary claim against Collins.

In the prison context, a First Amendment retaliation claim requires "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The plaintiff has the burden of pleading the absence of legitimate correctional goals. *Rogers v. Campbell*, 2024 U.S. Dist. LEXIS 213891, at *19 (E.D. Cal. Nov. 25, 2024).

Addressing first the allegations against Swartz, Collins admits in his complaint that he did not initially comply when Swartz asked him to put his hands behind his back. ECF No. 214 at 11. The preservation of discipline and safety constitutes a legitimate penological interest. *Entler v. Bolinger*, 2008 U.S. Dist. LEXIS 27523, at *22 (E.D. Wash. Mar. 21, 2008). Collins has failed to meet his burden in alleging an absence of legitimate correctional goals and his First Amendment retaliation claim against Swartz must be dismissed.[20]

Similarly, regarding the complaint against Oblak and Dugan, Collins again fails to meet the burden of pleading the absence of legitimate correctional goals. Collins's complaint itself admits that Oblak refused to call a "man down" because Oblak thought Collins was going to attack the staff. ECF No. 214 at 31. Maintaining institutional safety and security is another legitimate penological interest. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (identifying prisoner order and stability as a legitimate correctional goal); *Storseth v. Spellman*, 654 F.2d 1349, 1355 (9th Cir. 1981) (same). Collins's own complaint alleges a legitimate penological interest, and therefore he has not sufficiently argued that there was an absence of a legitimate penological interest. Consequently, the retaliation claims against Oblak and Dugan must be dismissed.[21]

---

[20] Because I find that Collins failed to allege a claim, I do not reach the merits of Swartz's qualified immunity claim.

[21] Because I find that Collins failed to allege a claim, I do not reach the merits of Oblak and Dugan's qualified immunity claims.

### 5. *Collins's breach of contract claim is dismissed.*

Collins brings a breach of contract claim alleging that the defendants have breached a previous agreement to settle three civil cases.[22] ECF No. 214 at 34–37. Defendants argue that none of the individual defendants named in the complaint are named in the contract, and none of the parties named in the complaint were defendants in any of the settlement cases at the time of settlement. ECF No. 146 at 14. Therefore, defendants argue, no claim for breach can be maintained against the defendants. *Id.*

As a threshold matter, I find defendants' argument disingenuous. Collins attached a copy of the settlement agreement to the complaint.[23] The first page of the settlement agreement reads:

> This Settlement Agreement and Full and Final Release ("Agreement") is entered into between Ronald Collins, Inmate #67184 ("Mr. Collins"), and the Nevada Department of Corrections ("NDOC"), **on behalf of itself and all of its officers, directors, employees, former employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns, whether named or unnamed**[.]

ECF No. 243 at 4 (emphasis added). The plain language of the agreement demonstrates that NDOC intended for this settlement agreement to bind those that were not necessarily named defendants in any of the cases that gave rise to the settlement agreement.

Despite this disingenuous argument, Collins's claim still fails because he does not address whether any of the defendants named in the instant motion were officers, directors, or employees at the time this agreement was reached, or explain that any of the defendants are successors or agents of the individuals comprised in the agreement, or any other connection between those involved at NDOC at the time of the agreement and the defendants from whom he now seeks relief. Further, and fatal to this claim, Collins does not allege *how* any of the defendants breached the settlement agreement. For example, Collins alleges that he showed

---

[22] *Collins v. Collins, et al.*, No. 3:16-cv-00111-MMD-WGC, *Collins v. Antonov, et al.*, No. 3:17-cv-00417-MMD-WGC, and *Collins v. Aranas, et al.*, No. 3:18-cv-00329-MMD-CBC. I previously took judicial notice of these cases. ECF No. 68.

[23] As Collins attached the settlement agreement to the complaint, I am allowed to consider it when deciding on the motion to dismiss. *See Catholic League for Religious and Civil Rights,* 464 F. Supp. 2d at 941.

Rivas an order to see a rheumatologist, and that Rivas claimed that he did not have to comply with a specialist because the only made recommendations. *See* ECF No. 214 at 35–36. But Collins does not allege how this violates, i.e. breaches, the settlement agreement. Likewise, Collins alleges that his pain medication was changed, but does not allege how that constitutes a breach of the settlement, especially in light of the agreement's express condition that NDOC would abide by the recommendation of the pain management specialist "within the ability of NDOC to comply for institutional safety and security purposes." *See* ECF No. 243 at 8. Without additional information or allegations, I cannot discern whether the settlement agreement imposes duties or obligations on defendants. So Collins's breach of contract claim must be dismissed.

### 6. *Collins's Fourteenth Amendment due process claims are dismissed.*

Collins alleges that defendants violated the due process clause of the Fourteenth Amendment when, after he was rushed to the hospital, he was charged $2,678.81 in sanctions for an "alleged medical hospital bill." ECF No. 214 at 25–26. Next, Collins alleges that Dugan violated the due process clause when he oversaw Collins's disciplinary hearing and claims that he was not given (1) "a three party committee panel as policy required," (2) "the ability to call plaintiff's witness," and (3) the opportunity "to argue and use as his defense — his inmate grievances even when one of them was clearly relevant[.]" ECF No. 214 at 32–33. Collins also alleges that Dugan was not impartial because he "refused to address [Collins's] medical complaints and ignored them." *Id.*

Defendants argue that Collins's claims regarding the medical bills is not actionable under due process because Collins's allegations do not amount to an authorized deprivation of property. Rather, the TAC alleges an unauthorized deprivation of property which is not actionable if a meaningful post-deprivation remedy is available for the loss. ECF No. 146 at 17 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). To demonstrate that Collins's complaint alleges an unauthorized deprivation of property, defendants point to Collins's statement that "because he received no disciplinary charges related to him being rushed to the hospital[,]"

defendants "cannot justify charging him sanctions." ECF No. 146 at 17 (citing ECF No. 214 at 26). Defendants state that Collins's allegations establish that an alleged deprivation could "only have been authorized as part of a disciplinary sanction in a disciplinary action pursuant to NDOC regulations and procedures." *Id.* at 18. Because Collins alleges that he did *not* receive disciplinary charges, this deprivation was unauthorized. *Id.* "Nevada has an established procedure for actions by persons in NDOC custody to recover compensation for lost or damaged personal property or personal injury caused by the tort of an NDOC employee." *Id.* (citing Nev. Rev. Stat. § 41.031). Defendants state that Collins has a "meaningful post deprivation remedy" by suing the State of Nevada in a tort action in Nevada state court, and thus his due process claim should be dismissed. *Id.*

Indeed, Collins has failed to state a colorable due process claim against defendants for the withdrawal of the money. Collins's allegations demonstrate that, because he was not given a disciplinary charge, defendants were not authorized to take the property. ECF No. 214 at 25–26. However, because Nevada provides a meaningful post-deprivation remedy for this type of loss, I dismiss this claim with prejudice and without leave to amend. *Nelson v. Nev. Dep't of Corr.*, 2024 U.S. Dist. LEXIS 180647, at *5 (D. Nev. Oct. 3, 2024) (citing Nev. Rev. Stat. § 41.0322 (setting forth guidelines for actions by persons in custody of NDOC to recover compensation for loss or injury)).

Turning to the due process violation against Dugan, defendants argue that this claim must be dismissed because Collins does not identify any disciplinary sanctions he received, so he fails to allege that he was deprived of liberty or property interest absent due process of law. ECF No. 146 at 23. After reviewing the complaint, I agree. There are no allegations that Collins was deprived of liberty or property interest absent due process of law. *See Quin'Ley v. Craig*, 2016 U.S. Dist. LEXIS 175378, at *9 (D. Haw. Dec. 19, 2016) ("To state a violation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought[.]"). Although Collins's complaint alleges that he was given "disciplinary charges,"

1   nowhere in the complaint does Collins state what the consequences, if any, he faced as a result

2   of those disciplinary charges. ECF No. 214 at 33. Without any allegations that Collins was

3   deprived of his constitutional interests, Collins has not adequately plead his due process rights

4   were violated so this claim against Dugan is dismissed.

5           **B. Leave to amend.**

6           Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice

7   so requires." Fed. R. Civ. P. 15(a)(2). As a general matter, courts apply Rule 15(a) with "extreme

8   liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). When determining

9   whether to grant leave to amend, the court considers the following factors: (1) undue delay; (2)

10  bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Sharkey v. O'Neal*,

11  778 F.3d 767, 774 (9th Cir. 2015) (citing *Foman*, 371 U.S. at 1822). In the Ninth Circuit, courts

12  liberally grant pro se plaintiffs leave to amend, as it is generally presumed that pro se plaintiffs

13  are unskilled in the law and are more prone to pleading errors than those litigants who are

14  represented by counsel. *Lopez*, 203 F.3d at 1131.

15          Although Collins has already amended the complaint twice, the second time was to

16  replace previously named "John Doe" defendants. *See* Order, ECF No. 169. Applying this

17  standard, unless specifically dismissed with prejudice and without leave to amend, all other

18  claims are dismissed without prejudice and with leave to amend as it is not wholly clear

19  whether amendment is futile.

20          To be clear, Collins's due process claim against defendants relating to the allegedly

21  improper money withdrawal is dismissed with prejudice and without leave to amend. Likewise,

22  Collins's supervisory liability claims are dismissed with prejudice and without leave to amend.

23  Should Collins elect to file a fourth amended complaint, additional instructions on how to do so

24  are provided in the conclusion of this order. Collins must comply with the instructions.

25

26

IV.    **Job, Naughton, and Rivas's motion to dismiss (ECF No. 247).**[24]

    **A. Collins's motion to strike Henry's motion to join is granted.**

As a threshold matter, the court must decide whether to accept defendant Tanisha Mulhead Henry's motion to join defendants Job, Naughton, and Rivas's motion to dismiss. ECF No. 247; Joinder, ECF No. 251. Collins filed a motion to strike Henry's joinder because Henry previously filed a motion for summary judgment and was therefore using the motion to dismiss to attempt to "re-argue to the court in her joinder motion to dismiss the same arguments as she had done in her summary judgment motion when her time has expired to file any such motion to dismiss without leave of the court." ECF No. 252 at 3. In response Henry argues that, because this court gave defendants forty-five days to supplement their motion to dismiss in response to Collins's filing of the TAC, her joinder is proper. ECF No. 255. Henry is correct that defendants were given forty-five days to supplement their motion to dismiss. However, a review of the docket demonstrates that Henry did not file a joinder to the motion to dismiss until February 6, 2025. ECF No. 251. The TAC was filed on November 14, 2024, so Henry's joinder was filed well past the motion to dismiss deadline. Although Job, Naughton, and Rivas filed a motion to extend the timeline to file their motion to dismiss, Henry was not named as a defendant in that motion seeking the extension. Mot. to extend, ECF No. 235. Therefore Henry's joinder is untimely, so I grant Collins's motion to strike. *See Facebook, Inc. v. Onlinenic Inc.*, 2022 U.S. Dist. LEXIS 8643, at *8 n.2 (N.D. Cal. Jan. 18, 2022) (granting a motion to strike a joinder when the deadline for the filing a Rule 12 motion had long expired).

---

[24] Collins objects to this motion and argues that because defendants filed a new motion to dismiss instead of just supplementing the motion to dismiss at ECF No. 146, they have violated my order (ECF No. 198). Mot., ECF No. 249. However, Job, Naughton, and Rivas were not part of the group of defendants that filed the motion to dismiss at ECF No. 146. Therefore, this motion does not violate my order.

**B. Discussion**

### 1. *Collins's First Amendment retaliation claim against Job is dismissed.*

Collins alleges that Job filed false disciplinary charges against him that were later dismissed to get Collins to stop calling "man down" emergencies. ECF No. 214 at 18–19. Defendants argue that Collins's complaint fails because Collins does not allege an adverse action or chilling effect. ECF No. 247 at 8. Specifically, defendants argue that Collins alleges that the disciplinary charges are "false" and that false information, without more, does not constitute an adverse act. *Id.* (citing case law). But Collins's complaint does not allege that the charges were false. He argues that the disciplinary charges were given in response to Collins's "man down" call. ECF No. 214 at 18–19. The adverse action was the disciplinary charges. So Collins has adequately pled an adverse action.

"[W]here a plaintiff pleads actual harm resulting to him or her from the retaliatory action, an independent assertion that the harm had a chilling effect is not required." *Parish v. Solis*, 2014 U.S. Dist. LEXIS 65827, at *29–30 (N.D. Cal. May 13, 2014) (citing *Rhodes*, 408 F.3d at 567 n.11). A review of the complaint demonstrates that Collins does not allege that the harm had a chilling effect, nor does he allege any actual harm resulting from the disciplinary charges. *See id.* (noting that "actual harm" was sufficiently pled where the plaintiff suffered "loss of one year of behavioral credit and indefinite solitary confinement as a result of his disciplinary charge"). The complaint itself says the charges were dismissed a month after they were levied. ECF No. 214 at 19. Therefore the retaliation claim against Job is dismissed.[25]

### 2. *Collins's breach of contract claim against Rivas is dismissed.*

Collins next alleges that Rivas breached various provisions of a previous agreement to settle three cases. ECF No. 214 at 36. Specifically, Collins alleges that, in violation of the settlement agreement, Rivas (1) refused to allow Collins to see a rheumatologist, (2) told Collins

---

[25] Because I find that Collins failed to allege a claim, I do not reach the merits of Rivas's qualified immunity claim.

he would not provide him medication from Las Vegas Pain Institute, (3) changed Collins's medication from Tylenol with Codeine, Baclofen and Indomethacin to Regular Tylenol and Cymbalta, (4) did not treat Collins for his spinal condition, (5) ignored Collins's left arm condition, (6) refused to get Collins an MRI for a lump on his testicle, and (7) refused Collins access to a hand specialist. *Id.* at 36–43. This claim fails for the same reason as the breach of contract claim in the prior motion to dismiss. The complaint does not explain how Rivas fits into one of the categories of people that NDOC intended to bind by the settlement agreement. ECF No. 243 at 3–11. Therefore, I cannot ascertain whether the contract imposes any duties or obligations on him. The TAC also fails to identify which provision(s) of the settlement agreement were allegedly breached by Rivas. Thus, Collins's breach of contract claim against Rivas must be dismissed.

### 3. *Collins's retaliation claim against Rivas is dismissed.*

Collins also brings a First Amendment retaliation claim against Rivas because, in response to the settlement agreement, Rivas refused to provide Collins with anti-embolism stockings. ECF No. 214 at 36. Collins also alleges that, in retaliation for writing a 110-page grievance, Rivas cancelled Collins's medication. *Id.* at 38. Defendants allege that Collins has failed to demonstrate that retaliation was a substantial or motivating factor behind Rivas's actions. ECF No. 247 at 15. I agree. To successfully demonstrate a retaliation claim, a plaintiff must demonstrate that the defendant was aware of the protected activity. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Although Collins does plead that he showed Rivas the settlement agreement, ECF No. 214 at 36, Collins's complaint appears to allege that Rivas's decision to not give him the anti-embolism stockings occurred *before* Collins even spoke with Rivas to show him the settlement agreement. *See id.* ("Plaintiff **prior to speaking with defendant Rivas** got with the nurse to exchange his anti-embolism stockings for his leg condition he had been using for years. Defendant Rivas informed the nurse that was attempting to hand plaintiff the new anti-embolism stockings not to give plaintiff them") (emphasis added).

Therefore, it is unclear as to whether Rivas was aware of the settlement agreement at the time he denied Collins the stockings, and as I explained above, it is not clear whether Rivas was even bound by the agreement. Finally, Collins does not plead any facts demonstrating that Rivas was aware of the 110-page grievance filed against him. Consequently, Collins retaliation claim against Rivas is dismissed.

### 4. Collins's deliberate indifference to medical needs claim against Rivas is dismissed.

Collins also brings an Eighth Amendment deliberate indifference to medical needs claim against Rivas for (1) refusing to honor a specialist's referral to rheumatology, (2) denying him a pair of anti-embolism stockings, (3) changing his pain medications from Tylenol with Codeine, Baclofen and Indomethacin to ordinary Tylenol and Cymbalta, (4) refusing to provide him with his "Treatment Plans by Las Vegas Pain Institute," (5) denying him treatment for his left arm and dislocated left clavicle, (6) refusing to comply with spinal specialist orders or neurologist orders, (7) refusing to refer his MRI on his right testicle for diagnosis, (8) failing to act and preventing Collins from walking up and down hills despite his flat yard restriction, and (9) failing to provide Collins with a walker or treatment for his broken toe. *See generally* ECF No. 214.

Collins's alleges that Rivas was deliberately indifferent to his serious medical needs when he did not honor a specialist's referral to rheumatology and when he refused to give him a pair of anti-embolism stockings. *Id.* at 35–36. Both claims fail. To successfully plead an Eighth Amendment claim based on medical care in prison, a plaintiff must show a "serious medical need demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of paint." *Leiva v. Zaldivar-Galves*, 2023 U.S. Dist. LEXIS 202870, at *4 (E.D. Cal. Nov. 13, 2023) (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)). Collins's complaint is devoid of any facts indicating that Rivas's failure to refer him to a rheumatologist or his failure to provide him anti-embolism socks caused him any further significant injury or the unnecessary and wanton infliction of pain.

Additionally, Collins's claim that Rivas was deliberately indifferent to his serious medical needs for changing his medicine fails. Courts in this district have held that a plaintiff cannot maintain an Eighth Amendment deliberate indifference claim against a defendant for prescribing different medications than requested. *See Rodriguez v. Kroxton*, 2018 U.S. Dist. LEXIS 4726, at *8–9 (C.D. Cal. Jan. 9, 2018) (collecting cases). Further, although Collins alleges that Rivas was aware that he had a prior bad reaction to Cymbalta, it is not clear from the allegations that Cymbalta posed a serious risk of harm, of which Rivas was aware, and or that it caused Collins harm. Merely alleging that Rivas was aware that Collins feared a "bad" reaction of unknown nature and severity does not meet the standard. *Mosier v. Cal. Dep't of Corr. & Rehabilitation*, 2013 U.S. Dist. LEXIS 106048, at *12 (E.D. Cal. July 26, 2013).

Collins's claims that Rivas was deliberately indifferent to his serious medical needs when he refused to provide him with his "Treatment Plans by Las Vegas Pain Institute," denied him treatment for his left arm and dislocated left clavicle, refused to comply with spinal specialist orders or neurologist orders, and failed to refer the MRI of his right testicle for diagnosis all fail. *See* ECF No. 214 at 40–42. To successfully plead an Eighth Amendment deliberate indifference claim, a plaintiff must plead sufficient facts to demonstrate that the defendant was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." *Scott v. Beregovskay*, 2025 U.S. App. LEXIS 278, at *2 (9th Cir. Jan. 7, 2025) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Collins's complaint fails to provide facts that demonstrate that Rivas knew: (1) about the treatment plans, (2) what the treatment plans state, (3) Collins was suffering from left arm pain, (4) Collins had a dislocated clavicle, (5) of the vaguely identified spinal specialist and neurologist orders, or (5) that Collins was suffering some a condition on his right testicle.

Lastly, Collins's claims that Rivas was deliberately indifferent to his serious medical needs when he knew Collins was still walking up and down hills despite his flat yard restriction and failed to act, and for failing to treat his broken toe both fail. First, Collins provides no facts

in the complaint indicating that Rivas, as medical personnel, could do anything more than place Collins on a flat yard restriction, which the complaint admits is still in effect. ECF No. 214 at 43–44. Second, courts have made clear that a broken toe is not a "serious medical need for purposes of a deliberate indifference claim under the Eighth Amendment. *Belvins v. San Bernardino Cty. Sheriff's Dep't*, 2019 U.S. Dist. LEXIS 121894, at *18 (C.D. Cal. July 19, 2019) (finding a broken toe is not a serious injury for purposes of the Eighth Amendment). For these reasons, all of Collins's deliberate indifference claims against Rivas fail and are dismissed.

### 5.   *Collins's breach of contract claims against Naughton are dismissed.*

Collins brings a breach of contract claim against Naughton for failing to abide by the settlement agreement in several instances. ECF No. 214 at 35–45. Unlike the other defendants in this action, Naughton is a party to the settlement agreement. *See* Settlement agreement, ECF No. 243 at 4. However, defendants argue that the breach of contract claim against Naughton still fails because the allegations are conclusory or fail to establish a breach of any of the terms of the settlement agreement. ECF No. 247 at 11. I agree.

Collins first argues that Naughton breached the terms of the settlement agreement by refusing to adhere to a specialist's recommendation to refer him to a rheumatologist. ECF No. 214 at 35–36. Defendants argue that Collins fails to allege which specialist from the settlement agreement referred him to rheumatology. ECF No. 247 at 12. Defendants further argue that Naughton did not breach the contract because, even if one of the specialists in the agreement referred him to a rheumatologist, the settlement agreement does not require that Naughton or NDOC abide by all referrals to treatment for any condition. *Id.* Rather, the settlement agreement only states that "NDOC agreed to abide by each specialist's specific orders for treatment of the specific condition for which Collins was referred to said specialist." ECF No. 247 at 12; *see* Settlement agreement, ECF No. 243 at 7–8. NDOC solely agreed to abide by the orders of the "hand specialist specifically for treatment of the hand 'bump,' the spine specialist specifically for treatment of the spine/foot drop and restless leg syndrome, the pain management specialist

specifically for treatment of lower back pain, and Dr. Kam specifically for treatment of the shoulder and bicep conditions." ECF No. 243 at 7–8. A review of the complaint reveals that the alleged rheumatology referral was for his condition where Collins turned red and passed out. ECF No. 214 at 43. That *was not* a condition provided for in the settlement agreement, and therefore Naughton could not have breached the agreement by refusing to refer Collins to the rheumatologist. This claim is dismissed with prejudice and without leave to amend.

Collins next argues that Naughton breached the settlement agreement by changing his pain medication. ECF No. 214 at 37. Defendants argue that this claim fails because NDOC only agreed to abide by the pain specialist's recommendations for treatment of Collins's lower back and Collins does not allege what pains his medications were meant to treat, much less what the pain specialist's recommendations were and how NDOC did not abide by them. ECF No. 247 at 12. I agree. Indeed, the settlement agreement does not state anything about Collins's pain medications. ECF No. 243. Therefore, without more information, Collins's allegations do not plausibly allege that NDOC and Naughton violated the settlement agreement by changing his pain medication, so this claim is dismissed.

Collins next argues that Naughton breached the settlement agreement by refusing to provide him with his "Treatment Plans by Las Vegas Pain Institute." ECF No. 214 at 41. Collins fails to allege when the treatment plans were issued, what the plans are for, and how they relate to the settlement agreement. Therefore he has not plausibly alleged that Naughton violated the settlement agreement, so this claim is dismissed.

Collins next argues that Naughton breached the settlement agreement by denying him treatment for his left clavicle and left arm as ordered by Dr. Kam. ECF No. 214 at 41–42. A review of the settlement agreement demonstrates that NDOC agreed to "abide by the recommendations of Dr. Kam for the treatment of his shoulder and bicep medical issues." ECF No. 243 at 8. Defendants argue that Collins's allegations that he was denied treatment for his dislocated left clavicle and left arm do not suffice because the settlement agreement only accounts for

treatment of the "shoulder and bicep medical issues." ECF No. 247 at 13; *see* ECF No. 243 at 8. However, liberally construing the pleadings,[26] I find that Collins is likely talking about his shoulder and bicep medical issue. But this does not save his claim because Collins fails to allege what specific treatment Dr. Kam ordered, so this court has no ability to evaluate if that plan was actually breached. There are not enough facts sufficient to plausibly allege that Naughton breached the settlement agreement for failing to provide him this treatment, so this claim is dismissed.[27]

Collins next argues that Naughton breached the settlement agreement by refusing to abide by the "spinal specialist orders or the neurologist orders." ECF No. 214 at 40. First, nowhere in the settlement agreement does NDOC agree to refer Collins to or abide by the recommendations of a neurologist. *See* ECF No. 243 at 4–11. So the breach of contract claim as to the neurologist is dismissed with prejudice. Second, regarding the spine specialist, the settlement agreement says that "NDOC will abide by the recommendations of the spine specialist for treatment of the lower back and restless leg syndrome[.]" *Id.* at 243 at 8. Collins's complaint fails to demonstrate what treatment or medication was denied to him. Without more, I cannot ascertain whether Naughton breached the settlement agreement as to this condition and the claim must be dismissed.

Collins next argues that Naughton breached the settlement agreement by refusing to treat his right testicle lump and refer it for diagnosis. ECF No. 214 at 42. A review of the settlement agreement shows that NDOC did not agree to abide by any recommendations regarding treatment of his right testicle and so this breach of contract claim fails and is dismissed with prejudice.

---

[26] Pro se pleadings are liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700 (9th Cir. 1990).

[27] Once again defendants cite to Collins's medical records that were filed under seal to support a separate motion in the record. As these were not attached to the complaint, or referenced in the complaint, I cannot and do not consider them. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegation is tested by a motion under Rule(12)(b)(6) 'review is limited to the complaint.'" (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993))).

Collins next alleges that NDOC and Naughton breached the settlement agreement by refusing him access to the hand specialist for his follow up appointment. *Id.* at 43. However, Collins fails to allege that this appointment was for the hand bump. Considering the settlement agreement specifically says that NDOC will abide by "the recommendation of the hand specialist on what, if any, treatment is necessary to address the 'bump,'" Collins's complaint does not plausibly allege a breach of contract claim for the issue with the hand specialist, so this allegation is dismissed.

Lastly, Collins alleges that NDOC and Naughton breached the agreement by allowing the URP board to deny specialists treatment orders. This claim fails because Collins failed to allege what specialists' treatment orders were being violated and for what conditions treatment was being ordered.[28]

Based on the pleadings, Collins has not plausibly alleged that Naughton breached any aspect of the settlement agreement. Therefore, all the breach of contract claims against Naughton are dismissed.

### 6. *Collins's deliberate indifference claims against Naughton are dismissed.*

Collins brings a deliberate indifference to serious medical needs claim in violation of the Eighth Amendment against Naughton for (1) failing to provide Collins with the Las Vegas Institute treatment plans, (2) denying him treatment for his left arm and dislocated left clavicle, (3) refusing to comply with the spial specialist or neurological specialists' orders, and (4) failing to refer Collins's MRI of his right testicle for diagnosis. ECF No. 214 at 40–42. However, Naughton is a provider at Northern Nevada Correctional Center (NNCC). ECF No. 247 at 19–20; *see* ECF No. 214 at 4 (stating that Naughton resides in Carson City, Nevada, where NNCC is located). Collins fails to allege how Naughton, as a provider at NNCC, participated in any of the

---

[28] Defendants again cite to information outside of the complaint to make argument. I do not consider these arguments or information.

decisions made at HDSP that are the basis for the amended complaint. Accordingly, these claims against Naughton are dismissed.

**C.    Leave to amend.**

Collins's breach of contract claim against Naughton for alleging (1) refusing to adhere to a specialist's recommendation to refer him to a rheumatologist and (2) refusing to abide by the neurologist's orders are dismissed with prejudice. Amendment is futile as to these claims because the settlement agreement does not require referrals to a rheumatologist or a neurologist. However, the rest of Collins's claims against Job, Rivas, and Naughton are dismissed without prejudice because it unclear that amendment would be futile.

**V.    Conclusion**

IT IS THEREFORE ORDERED that defendants Williams, Swartz, Johnson, Dreesen, Scally, Oblak, Dugan and Cabrera's motion to dismiss **[ECF No. 146] is GRANTED in part and DENIED in part.** Collins's Eighth Amendment excessive force claim against Swartz survives. Collins's Fourteenth Amendment due process claim relating to the allegedly improper money withdrawal, his Eighth Amendment excessive force claim against defendant Swartz, and his breach of contract claim are dismissed **with prejudice.** The remaining claims are dismissed **without prejudice and with leave to amend.**

IT IS FURTHER ORDERED that defendants Job, Rivas, and Naughton's motion to dismiss **[ECF No. 247] is GRANTED.** Collins's breach of contract claim against Naughton involving the rheumatologist and neurologist is dismissed **with prejudice.** His remaining claims are dismissed **without prejudice and leave to amend.**

IT IS FURTHER ORDERED that if Collins chooses to file a Fourth Amended Complaint, he must comply with the following instructions:

(1) The Fourth Amended Complaint must be titled "Fourth Amended Complaint" and must be filed on or before **May 5, 2025**. The court is giving Collins more than a

month to file the amended pleading, so absent extraordinary circumstances, no extension will be granted.

(2) The Fourth Amended Complaint must comply with Federal Rule of Procedure 8. Rule 8 requires the pleader to set forth his averments in a simple, concise, and direct manner. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including those lacking access to counsel).

(3) The Fourth Amended Complaint **cannot bring any new claims for relief or name any new defendants. This means Collins can re-allege any claims already asserted and attempt to cure the pleading deficiencies identified in this order. Collins cannot, however, reallege claims that were dismissed with prejudice.**

(4) Further, the Fourth Amended Complaint **cannot be a shot-gun pleading.** Therefore, Collins is reminded of the Rule 8 requirement that a complaint be "short and plain" and is also cautioned that a re-filing of a shotgun pleading will result in dismissal. Collins is further advised that if he decides to file another complaint, a smaller number of clearly stated allegations would go much further than continuing to attempt to plead every potential basis for liability. *See* Fed. R. Civ. P. 8(a)(2) ("[A] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). A "shotgun pleading" is a "pleading that excessively prioritizes *breadth* over *depth* such that the complaint is 'so vague and ambitious that [the defendants] [could] not reasonably be required to frame a responsive pleading.'" *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *47 (D. Ariz. Mar. 28, 2013) (quoting *Bryne v. Nezhat*, 261 F.3d 1075, 1128–32 (11th Cir. 2001)) (emphasis in original). Such a pleading can take two forms: first, when one party "pleads multiple parties did an act, without identifying which party did what specifically." *Id.* (citing *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011)). Second, a shotgun pleading occurs when is one party "pleads multiple counts[] and

does not identify which specific facts fit that [c]ount in that very [c]ount, but instead rely on a blanket incorporation clause that incorporates all of the statement of facts." *Id.* (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006)). Shotgun pleadings are concerning because they "lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard." *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *52. Collins's complaint classifies as a "shotgun" pleading because it is "an overbroad attempt to confuse which facts apply to which counts and plead underdeveloped theories of liability" against most defendants. *Borenstein v. Animal Found.*, 2023 U.S. Dist. LEXIS 106100, at *9 (D. Nev. June 20, 2023).

(5) The Fourth Amended Complaint must be complete in and of itself without referring to or incorporating by reference any previous complaint or exhibits.

(6) Each claim in the Fourth Amended Complaint must be separately plead against each individual defendant. Any official capacity claims must be plead separately from the allegations related to any other claim.

(7) If Collins elects to include exhibits as part of the Fourth Amended Complaint, he must attach *only* the documents related to the claims he is permitted to bring pursuant to this order. Collins is responsible for attaching and filing his own exhibits. The court *will not* permit Collins to reference previously filed exhibits.

IT IS FURTHER ORDERED that failure to follow these instructions may result in dismissal of the Fourth Amended Complaint.

IT IS FURTHER ORDERED that Collins's motion to supplement **[ECF No. 216] is STRICKEN.**

IT IS FURTHER ORDERED that Collins's motion to extend time **[ECF No. 250] is DENIED.**

IT IS FURTHER ORDERED that Collins's motion to strike Henry's joinder to the motion to dismiss **[ECF No. 252] is GRANTED**, therefore Henry's substantive joinder **[ECF No. 251] is STRICKEN**.

IT IS FURTHER ORDERED that Collins's letter **[ECF No. 253] is STRICKEN**.

Dated: February 25, 2025

_____
Cristina D. Silva
United States District Judge